THE NORTHERN LIGHT (two cases).

(District Court, D. Washington, N. D. January 29, 1901.)

1. SHIPPING—BOTTOMRY—NECESSITY.

Where a vessel carrying passengers was so destitute of provisions that passengers and crew were put on short allowance, and very little remained when she reached an intermediate port, and the master was without money, and unable to obtain credit at such port, or to communicate with the owners or charterers within a reasonable time, the case was one of such necessity as justified his giving a bottomry bond on the ship for the money required.

2. SAME—REQUISITES AND VALIDITY OF BOND.

A bottomry bond, which does not purport to create any personal liability, and which is payable five days after the arrival of the ship at her port of destination, expresses a contract by which the debt is subject to the maritime risk essential to support such a bond.

3. SAME—EXACTION OF PREMIUM.

The exaction of a premium of 10 per cent., besides interest, on the amount loaned on a bottomry bond on a bark having several hundred miles to sail before completing her voyage, is not so extortionate as to invalidate the bond.

4. SEAMEN—WAGES—OVERTIME.

Seamen serving under entire contracts, either by the month or for the voyage, are not entitled to a lien on the vessel for overtime on account of services rendered on Sunday or at night, where the work performed was not outside their proper duties under their contracts, notwithstanding a promise by the master to pay them for such overtime.

5. MARITIME LIENS—SERVICES AS WATCHMAN.

A watchman employed for a vessel by the master by the day for no definite period is not entitled to a lien on the vessel for wages on account of services rendered under such contract after the vessel has been taken into legal custody.[1]

In Admiralty. Libels to establish liens against the bark Northern Light.

[1] Maritime liens for supplies and services, see note to The George Dumois, 15 C. C. A. 679.

Charles F. Munday, for Pacific Clipper Line.

Preston, Carr & Gilman, for Laidlaw and Stoel.

Ira Bronson, for claimant.

Boyd J. Tallman, Piles, Donworth & Howe, and L. Frank Brown, for interveners.

HANFORD, District Judge. From the evidence and pleadings in these cases I find that in the month of July, 1900, the American bark Northern Light was dispatched by her charterers on a voyage from Nome to Seattle, with a large number of passengers, who, together with the officers and crew, made a total number of 100 persons; that, being insufficiently supplied with water and stores for the voyage, it became necessary for the vessel to stop at Dutch Harbor to procure necessary supplies. The captain had no money, and, after making an effort to obtain supplies at Dutch Harbor on credit, and being unsuccessful, he was obliged to obtain money by bonding the ship. It was impossible for him at that place to communicate with the owners or charterers without great delay, and the ship was so nearly destitute of provisions that he could not proceed on the voyage, nor remain at Dutch Harbor while waiting to communicate with the owners or charterers, because he was unable to feed the passengers and crew while waiting, and the expense of delay would have been a large sacrifice. Under those conditions the captain obtained a loan of $2,000 for which the bottomry bond pleaded by Laidlaw and Stoel in their libel was executed and delivered. This bond is for the amount of $2,200, with interest on that amount at the rate of 8 per cent. per annum, due and payable five days after the arrival of the ship at Seattle; the $200 in excess of the amount loaned being a premium which the lenders exacted. The bond recites the conditions making it necessary for the captain to procure the loan, and contains all the essentials of a valid bottomry bond. The validity of the bond is disputed on three grounds: First, insufficient evidence of a necessity for hypothecating the ship; second, the bond is not, by its terms, payable upon the contingency of the safe arrival of the vessel at her port of destination; third, the bond is void, because given for an amount in excess of the amount actually loaned.

1. By the uncontradicted testimony it is clearly shown that the vessel was so nearly destitute of provisions when she left Nome that the passengers and crew had to be put on short allowances before reaching Dutch Harbor, and on arrival there very little remained. The captain's testimony that he had no money, that he applied for credit at Dutch Harbor, and was refused, is also uncontradicted. I think that a very clear case of necessity is made out.

2. The bond does not purport to create any personal liability, and there was no separate agreement making the captain, owners, or charterers liable for the debt, and by the terms of the bond payment was not to be due until five days after arrival of the ship at Seattle. From this it appears plainly to me that the bond does clearly express a contract by which the lenders assume the risk of the vessel being lost before reaching her destination, and their debt was subjected to the maritime risk essential to the validity of a bottomry

bond, because payment could not be enforced until after arrival of the ship at Seattle, and then only by a proceeding in rem.

3. It is usual and lawful for lenders upon this kind of security, who assume the risk of losing money advanced to enable a ship to proceed upon her voyage, to require compensation at a liberal rate. The exaction of a premium of 10 per cent. of the amount actually loaned, under the circumstances detailed, in addition to interest at the rate of 8 per cent. per annum, was not, in my opinion, extortionate. The transaction was not intended to cover a swindle upon the owners or insurers of the ship, or other creditors. Therefore the case does not come within the rule laid down by the supreme court in the case of Carrington v. Pratt, 18 How. 63. The validity of a similar bond was sustained by Judge Story in the case of The Packet, Fed. Cas. No. 10,654.

4. Members of the crew have intervened to recover wages due them for services on the voyage from Seattle to Nome and return, and from the evidence I find that the following sums are due them, to wit: Swenson, $246.50; Quigley, $80; Sogerson, $43; Erickson, $75; Dixon, $75; Nelson, $75; King, $156; Roche, $75; Casey, $75; Prell, $80; Corlett, $20; Bittamount, $20; Armstrong, $75; Snyder, $2.50.

5. I disallow all claims of seamen for overtime, because it appears from the evidence that they were serving under entire contracts for either a fixed rate of wages per month or a specified sum for making the run from Nome to Seattle, and it does not appear that they performed any work outside of their proper duties under their contracts. There is uncontradicted evidence that some of them worked on Sunday and during the nighttime at Dutch Harbor, and that the captain promised to pay them for overtime at the rate of $1 per hour, but the evidence does not show that there was any work to be performed except the ordinary routine work necessary to take proper care of the ship and serve the passengers, and I hold that the captain had no authority to create a lien upon the ship for extra pay for doing that kind of work. The intervening libelant Snyder claims wages at the rate of $2.50 per day from August 20th to August 31st for services as watchman under a contract with the captain, but he was only employed one day before the vessel was taken into custody by the marshal. His contract was not made for a definite period of time, and I hold that under such an indefinite contract there can be no lien upon the vessel for services rendered while she was in legal custody.

6. The evidence sustains the allegations of the libel of the Pacific Clipper Line, and of the intervening libels of the Frye-Bruhn Company and the Puget Sound Tugboat Company. Each of said parties acquired a valid lien upon the ship for the amounts sued for. The fund derived from the sale of the vessel is not sufficient to pay in full all the liens, and I hold that the respective parties are entitled to payment in the following order: First. The costs and expenses of litigation will be paid in full, including proctors' fees, which will be allowed by the court as follows: Proctors for the seamen suing for wages are allowed a total amount of $170, of which Mr. Tallman will receive $30, and Mr. Brown $140; the proctors for the Puget

Sound Tugboat Company, $20; the proctor for the Frye-Bruhn Company, $20; the proctor for the Pacific Clipper Line, $20; and the proctors for Laidlaw and Stoel, $20. Second. The wages of the seamen will be paid in full in the amounts above specified. Third. The Puget Sound Tugboat Company will be paid $150. Fourth. The balance of the fund in court will be paid to Laidlaw and Stoel, on account of their bond.